NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAURICE A. BOWERS,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY<br><br>　　　　　　　　Defendant. | Civil Action No.: 13-cv-444 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.　INTRODUCTION**

Maurice A. Bowers ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed in part, vacated in part, and remanded.

**II.　BACKGROUND**

　　**A.　Procedural History**

Plaintiff applied for disability insurance benefits under Title II ("DIB") and supplemental

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

security income under Title XVI ("SSI," collectively "Benefits") from the Social Security Administration ("SSA"). Plaintiff initially alleged disability beginning on November 25, 2008, but amended that date to May 18, 2010 at a hearing before the ALJ. (R. 38.) Plaintiff's claim was denied initially on April 12, 2011. (R. 69.) Plaintiff filed a request for reconsideration on June 9, 2011 (R. 75), which was denied on December 1, 2011. (R. 77.) Plaintiff requested an administrative hearing on February 1, 2012. (R. 88.) The ALJ held that hearing on April 6, 2012 (R. 34-64.) In a written opinion dated April 17, 2012, the ALJ determined Plaintiff was not disabled. (R. 20-29.) The Appeals Council denied review on November 19, 2012, rendering the ALJ's decision the final judgment of Defendant. (R. 1.) Plaintiff timely filed this action.

### B.   Personal and Employment Background

Plaintiff was 33 years old at the amended onset date of his alleged disability. (R. 38.) Plaintiff's submitted employment history includes employment as: (1) a general worker in temporary staffing agencies from January 1993 to January 2000; (2) a machinist from January 2001 to June 2001; (3) a security guard from January 2006 to May 2006; and (4) a general laborer in a temporary employment agency from January 2002 until November 25, 2008. (R. 145.) Plaintiff attended school through ninth grade. (Id.)

The Vocational Expert at Plaintiff's hearing before the ALJ characterized Plaintiff's laborer work as medium, unskilled work. (R. 60.)

### C.   Medical Background

Plaintiff was hit by a car in 1996, which cost him the use of his left eye and left him with two metal rods in his right leg. (R. 144; 234.) Plaintiff claims that the loss of his eye and the rods in his leg both limit his ability to work. (R. 144.) Plaintiff also claims that his asthma, depression, and a stab wound in his stomach limit his ability to work. (Id.)

At the hearing, Plaintiff was questioned regarding these claimed impairments. Regarding Plaintiff's vision, he complained that due to having his left eye removed, he had to strain to see, causing headaches and blurry vision in his right eye. (R. 43.) Plaintiff testified that he did not have glasses for his blurry vision because he did not have access to health care. (R. 45.) With respect to his missing left eye, Plaintiff testified that he often needs to clean his eye socket for about twenty minutes. (R. 46.)

Regarding Plaintiff's leg, he testified that the screws in his leg cause constant pain when it rains or snows, harming his mobility. (R. 43.) To compensate, he testified that he sometimes walks with a cane, and that he takes Advil and Aleve. (R. 49-50.) Additionally, he has been prescribed Nabumetone and Ketorolac for pain in the past. (R. 52; 201.) He testified that he had back pain while sitting, and that he could only sit for half an hour. (R. 57-58.) He further testified that he could stand for half an hour and only walk for a block and a half. (R. 58.) He claims to be able to pick up ten pounds. (Id.)

Plaintiff testified that during a typical day he plays cards, watches television, and listens to music. (R. 53.) He is able to clean, do laundry, go to church, and visit relatives. (R. 54.) With respect to his mental state, Plaintiff testified that he broke up with the mother of his children in 2010 and was upset and depressed. (Id.)

Plaintiff presented at the University Hospital on May 18, 2010 complaining of depression after breaking up with his girlfriend. (R. 213.) Plaintiff had been drinking four twenty-four ounce cans of beer per day, but had not been eating. (R. 214.) Plaintiff was diagnosed with "mild dehydration and mild depression." (R. 223.) Plaintiff was seen by a psychiatric emergency screener. (R. 217.) His multiaxial diagnoses was: Axis I: "Alcohol Dependence, SIMD, r/o Bipolar Disorder;" Axis II: "Deferred; Axis III: Asthma, left eye blindness;" Axis IV: "finances,

housing;" Axis V: "55." (R. 215.) The report notes that Plaintiff did "not need medications at this present time." (Id.)

Plaintiff underwent a mental status examination at the request of the New Jersey Division of Disability Services by Dr. Paul F. Fulford on January 28, 2011. (R. 233.) Dr. Fulford noted that Plaintiff was oriented to time, place, and person, and that he understood the nature and purpose of the evaluation. (R. 234.) Dr. Fulford further noted that Plaintiff had good mental control and that his concentration was fair, his short term auditory recall memory was good, as was his abstract thinking. (R. 235.) He noted that Plaintiff experienced auditory hallucinations. (Id.) Dr. Fulford reported that Plaintiff's level of intelligence was borderline to low average, and his judgment was marginal. (Id.) Doctor Fulford's diagnostic impression was as follows: Axis I: "adjustment disorder with depressed features secondary to medical condition;" Axis II: "R/O borderline intellectual functioning;" Axis III: "Blind in left eye; right leg impairment with rods and screws inserted; asthmatic; borderline diabetes, by report;" Axis IV: "Joblessness, chronic illness;" Axis V: "65." (Id.)

Plaintiff underwent a physical examination by Dr. Alexander Hoffman on February 1, 2011. (R. 237.) Dr. Hoffman found that Plaintiff walks with a normal gait, and that there was no difficulty getting on and off the examination table. (Id.) Dr. Hoffman found Plaintiff lucid and cooperative. (Id.) He reported that Plaintiff used to wear prescription glasses as a child, and that his right eye had 20/70 visual acuity. (Id.) He found epiphora with tears and slight irritation of the area surrounding Plaintiff's left ocular region. (R. 237-38.) He also reported that Plaintiff could not put weight on his right leg. (R. 238.)

Plaintiff underwent a physical examination by ophthalmologist Dr. Christine L. Zolli on February 8, 2011. (R. 246.) Dr. Zolli noted that Plaintiff's right-eye vision without correction

was "20/200." (Id.) She noted that the left eye socket had mucinous discharge but no inflammation. (Id.) Her diagnostic impression was that Plaintiff had "myopia and astigmatism in the right eye," was blind in the left eye, and needs "fairly strong glasses" for his right eye. (R. 246-47.)

Dr. Thomas Yared filled out a psychiatric review technique form for Plaintiff on February 11, 2011. (R. 249.) Dr. Yared found no severe impairments (Id.), no functional limitations in any of the "B" Criteria of the Listings, and that the evidence did not establish the presence of the "C" criteria of the Listings. (R. 257-58.)

Dr. Gary Spitz filled out a physical residual functional capacity assessment on February 16, 2011. (R. 261-67.) Dr. Spitz assessed Plaintiff with no limitations other than visual limitations related to depth perception and field of vision, as well as environmental limitations indicating that Plaintiff should avoid concentrated exposure to hazards. (R. 263-64.)

Dr. Fernando examined Plaintiff on March 15, 2011. (R. 272.) Dr. Fernando noted that Plaintiff was in no acute distress, had a normal gait, and walked on his heels and toes without any difficulty. (R. 273.) Dr. Fernando concluded that Plaintiff had lost his left eye, was without a permanent prosthetic left eye, and found that Plaintiff's right ankle had a "mild degree of limitation in dorsiflexion." (R. 273-74.) Dr. Fernando concluded that the right ankle injury "could make weightbearing and walking uncomfortable or even painful." (R. 274.)

Dr. Toder submitted a report on March 15, 2011 regarding Plaintiff. (R. 275.) Reviewing x-rays, Dr. Toder found normal alignment of Plaintiff's spine, and anatomic alignment of Plaintiff's right femur. Dr. Toder found that there were healed fractures of the tibia and fibula, with a rod remaining in the tibia. (R. 275-76.)

Dr. Seung Park completed a residual functional capacity assessment of Plaintiff on April

8, 2011. (R. 279.) Dr. Park found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, could stand or walk for about six hours in an eight hour workday, and sit for a total of six hours in an eight hour workday. (R. 280.) He found that no limitations were assessed in pushing and pulling, manipulation, posture, visual, communication, or environmental spheres. (R. 280-82.)

## III. LEGAL STANDARDS

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the Record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual Record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir.

2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured status requirements of 42 U.S.C. § 423(c). In order to be eligible for Benefits, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must

determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has a severe impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

## IV.   DISCUSSION

Plaintiff raises two objections to the ALJ's decision. First, he argues that the ALJ erred in determining his RFC. Second, he argues that the ALJ did not meet her burden with respect to the step five analysis. Because the Court finds that the ALJ erred in part with respect to the RFC analysis, the Court does not address the Parties' arguments with respect to the step five analysis, which will be vacated.

### A.   The ALJ's RFC Analysis

Plaintiff argues that the ALJ's analysis was inappropriate in four ways. First, Plaintiff

argues that the ALJ's RFC determination failed to take into account his subjective complaints of pain as well as constant drainage from his enucleated eye. (Pl. Br. 11-14; 20-21). Second, Plaintiff argues that the ALJ erred in not explaining the discrepancy between state agency physician Dr. Park's RFC assessment finding that Plaintiff had a RFC including up to 'light' work and the ALJ's own RFC assessment finding that Plaintiff had an RFC including up to only 'sedentary' work. (Pl. Br. 14-15). Third, Plaintiff argues that the ALJ erred by supplanting the ophthalmologist Dr. Zolli's opinion regarding plaintiff's need for glasses with her own. (Pl. Br. 16-18). Fourth, Plaintiff argues that the ALJ improperly placed undue weight on Plaintiff's activities of daily living. (Pl. Br. 18). The Court will address each in turn.

### 1. The ALJ Erred In Part When Considering Plaintiff's Subjective Complaints

In evaluating a claimant's testimony regarding symptoms and pain, an ALJ proceeds in two steps. In the first step, she must determine whether there is a medically determinable impairment that could reasonably be expected to produce the alleged pain or symptoms. 20 C.F.R. §§ 404.1529, 416.929. When impairment is found, at the second step the ALJ must evaluate a claimant's subjective statements in relation to the objective evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); See Holley v. Colvin, 975 F. Supp. 2d 467, 479-80 (D.N.J. 2013) ("[T]here must be objective evidence of a condition that could cause the pain alleged."). When performing this second evaluation, the ALJ must assess (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) medications, treatments, or other measures the claimant takes to alleviate the symptoms; and (5) any other relevant factors. SSR 96-7p.

Plaintiff alleges that the ALJ failed to consider all of the relevant factors with respect to Plaintiff's subjective complaints of pain as well as constant drainage from Plaintiff's enucleated eye. (Pl. Br. 11-14; 20-21). Defendant argues that the ALJ properly considered all of the factors, and specifically credited Plaintiff's complaints of pain. (Def. Br. 15-16).

With respect to Plaintiff's pain, the Court agrees with Defendant. The ALJ specifically considered Plaintiff's leg impairment when assigning Plaintiff a sedentary exertional level and various exertional and postural restrictions. (R. 24.) Further, the ALJ specifically credited Plaintiff's pain with respect to his leg impairments for the limitations to standing and walking. (R. 24; 27). The ALJ also considered Plaintiff's daily activities (R. 27); Plaintiff's symptoms and aggravating factors (R. 27 ("his ankle problem could make weight bearing and walking uncomfortable or even painful")); and Plaintiff's medications, treatments, or other measures the claimant takes to alleviate the symptoms (R. 27 (citing testimony regarding Plaintiff's treatment, including taking over-the-counter Advil)). These findings are supported by substantial evidence in the Record. Accordingly, the Court finds that the ALJ properly followed the regulations, and will affirm the ALJ's evaluation of Plaintiff's credibility with respect to his subjective complaints of pain.

With respect to Plaintiff's testimony regarding the time and frequency required to clean his eye, the ALJ's findings are not supported by substantial evidence. At the first step of the credibility inquiry, the ALJ properly found that Plaintiff's impairments might reasonably cause the alleged symptoms. (R. 25). However, the ALJ erred at step two by failing to explain how she accounted for evidence in the record supporting Plaintiff's testimony as to the time required for Plaintiff to clean his eye-socket.

With respect to the first step, the ALJ cited two examining physicians corroborating that

there was excess fluid in Plaintiff's missing eye. The ALJ notes that Dr. Hoffman found that though there was no evidence of infection, Plaintiff had epiphora with tears and slight irritation of the surrounding ocular region of his missing eye; (R. 25-26; 237-38) and also that Ophthalmologist Dr. Zolli noted that Plaintiff's left eye socket had mucinous discharge but no inflammation. (R. 26; 246.)

However, at step two, the ALJ did not reconcile this evidence with Plaintiff's uncredited testimony that he often needs to clean his eye for about twenty minutes every two hours to ensure that fluid does not leak from the socket. (R. 26.) The ALJ simply stated that she "cannot account for the time and frequency [Plaintiff] alleges to clean his eye" because "this is not documented anywhere in the medical evidence." (R. 26.) The ALJ additionally noted that "normal breaks and lunch" during the day would be enough for Plaintiff to clean his eye. (Id.)

SSR 96-7 requires that when providing a credibility determination an ALJ must "give specific reasons for the weight given to the individual's statements." See also, Breslin v. Comm'r Soc. Sec., 509 Fed. App'x 149, 153 (3d Cir. 2013). Here, with respect to Plaintiff's statements regarding the frequency and duration of his eye cleaning, the ALJ has not adequately explained why Plaintiff's testimony was not credible. The ALJ reasoned that there is a lack of documentation specifically regarding the time required to clean Plaintiff's eye in the record. However, the reports by Dr. Hoffman and Dr. Zolli document that it needs to be cleaned, supporting Plaintiff's testimony. Further, Plaintiff's testimony regarding the time it takes to clear his eye is also corroborated by a November 2, 2010 third party function report filed by his roommate, Ellen Chambliss. She notes that Plaintiff is unable to sleep because of his "eye draining" and that he "has to take care of it all the time." (R. 178.) In another third party function report dated August 19, 2011 Ms. Chambliss states that Plaintiff's "eye is constantly dripping

11

fluid." (R. 194.) These reports were specifically credited by the ALJ as not contradicting her RFC determination, but the specific discussion of Plaintiff's "eye draining" was not addressed. (R. 27.)

Not addressing the supporting reports of Dr. Hoffman, Dr. Zolli or Ms. Chambliss in conjunction with Plaintiff's testimony regarding the time it takes to clean his eye warrants remand. See Fargnoli v. Massanari, 247 F.3d 34, 44 (3d Cir. 2001) ("[t]he ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was error.")

Additionally, finding that Plaintiff would be able to clean his eye during "normal breaks and lunch" is a conclusory statement not supported by the record. Accordingly, that aspect of the ALJ's credibility determination is "beyond meaningful judicial review." Thomas v. Comm'r Soc. Sec., 625 F.3d 798, 800 (3d Cir. 2010).

Accordingly, the Court will vacate the ALJ's credibility determination with respect to the time and frequency Plaintiff needs to clean his eye socket, and will remand the case with instruction to reopen the Record on this point, and to determine whether or not the duration and frequency would affect Plaintiff's RFC.

### 2. The ALJ Did Not Err In Relying On Dr. Park's RFC Assessment

Plaintiff argues that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because it does not address inconsistencies between it and an RFC assessment filled out by DDS physician Dr. Park. (Pl. Br. 15.) The Court disagrees.

Dr. Park found that the Plaintiff was capable of performing 'light' work, and the ALJ's assessment was that Plaintiff was capable of performing 'sedentary' work. As Defendant points out, a finding that a claimant can perform 'light' work implies that a claimant can perform 'sedentary' work. 20 C.F.R. §§ 404.1567(b) and 416.967(b) ("If someone can do light work, we

determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.") Accordingly, the Court finds that Dr. Park's assessment is consistent with the ALJ's determined RFC.

Further, even if it were inconsistent, the ALJ adequately explained her reasons for limiting Plaintiff to sedentary work, (R. 24 ("the sedentary exertional level of the RFC accounts for the limitations that [Plaintiff's] leg impairment would place upon him.")) and this determination is supported by substantial evidence. In discussing and reconciling the evidence, the ALJ needs only to set forth the reasons for her decision and does not need to follow a specific formula. Jones v. Barnhart, 364 F.3d 501, 504 (3d Cir. 2004). Accordingly, the ALJ's determination is affirmed on this point.

### 3. The ALJ Did Not Err In Evaluating Plaintiff's Vision Impairments

The ALJ did not assign a limitation to Plaintiff's blurry vision in his right eye. (R. 26.) In finding no limitation, the ALJ relied on Dr. Zolli's treatment notes indicating that Plaintiff has 20/200 vision and "sees blurry in his right eye as needs fairly strong glasses." The ALJ found that this indicated that Plaintiff's vision impairment was not severe, and declined to assign a limitation to it. (R. 26.)

Plaintiff argues that by stating that Dr. Zolli advised plaintiff to get corrective lenses instead of the more accurate statement that Dr. Zolli's case notes state that Plaintiff "needs fairly strong glasses" was an impermissible substitution of her own opinion for that of the Dr. Zolli. (Pl. Br. 16-18.) Defendant responds that Plaintiff's failure to get glasses after complaining of blurry vision goes to the ALJ's credibility evaluation. (Def. Br. 12-13.) The Court agrees.

The Record indicates that Plaintiff needed glasses and failed to get them. Dr. Hoffman's report indicates that Plaintiff used to wear prescription glasses as a child, and that Plaintiff had

20/70 visual acuity. (R. 237.) Plaintiff testified that he wore glasses as a teenager, and that the reason he had not gotten glasses was because he did not have Medicaid. (R. 43-45.) Indeed, these facts, in conjunction with the diagnosis by Dr. Zolli that Plaintiff "sees blurry in his right eye <u>as needs</u> fairly strong glasses" substantially support that Plaintiff's right-eye vision problems are not limiting under the applicable standard, as found by the ALJ. (<u>See</u> R. 247 (emphasis added)). Thus, the ALJ's credibility assessment discounting Plaintiff's allegations of disabling right eye strain is well supported in the record.

The Court disagrees with Plaintiff that the ALJ's decision runs afoul of SSR 82-59. (Pl. Br. 16.) That ruling applies only when, unlike this case, the Commissioner has found that Plaintiff would otherwise be disabled, but does not grant benefits because a claimant has refused to follow a proscribed treatment expected to restore the claimant's ability to work. <u>Lozado v. Barnhart</u>, 331 F. Supp. 2d 325, 340 (E.D. Pa. 2004) ("because the ALJ found that Plaintiff does not have a disabling impairment, Ruling 82-59 is not applicable here"). Indeed, as Defendant points out, whether or not a claimant pursues treatment, or whether the level of treatment is inconsistent with the level of complaints, are factors that ALJs are required to consider in determining a claimant's credibility. <u>See</u> SSR 96-7p. Accordingly, the Court affirms the ALJ's decision on this point.

### 4. The ALJ Properly Considered Plaintiff's Daily Activities

Plaintiff argues that the ALJ's reliance on Plaintiff's ability to perform daily activities to conclude that there was "no reasonable medical basis for such a degree of incapacity" is error. (Pl. Br. 18). In support of this contention, Plaintiff cites to case law indicating that it would be error to unduly rely on a Plaintiff's daily activities in the "absence of corroborating medical testimony" indicating that Plaintiff had no pain. <u>Smith v. Califano</u>, 637 F.2d 968, 972 (3d Cir.

1981). The instant case is distinguishable for two reasons.

First, here, the ALJ correctly evaluated the medial evidence as it related to Plaintiff's claims of disabling pain, as discussed previously in this Opinion. Second, the ALJ discussed Plaintiff's daily activities while discussing Plaintiff's credibility. Indeed, the quotation to which Plaintiff objects indicates as much when put into proper context: "<u>although the claimant indicated that his activities of daily living are significantly limited</u>, there is no reasonable medical basis for such a degree of incapacity, <u>and his activities of daily living are basically fully functional</u>." (R. 27 (emphasis added)). A discussion of daily activities is mandated to evaluate a claimant's credibility, and so it cannot be error to do so. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Accordingly, it was not error for the ALJ to consider Plaintiff's daily activities in this context, and the ALJ will be affirmed on this point.

## V.  CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed in part, vacated in part, and remanded for further findings consistent with this Opinion. An appropriate Order accompanies this Opinion.

DATED: June 27, 2014                  */s/ Claire C. Cecchi*
                                      **CLAIRE C. CECCHI, U.S.D.J.**